**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**ONDREA JEFFERSON,**

                     **Plaintiff,**

**v.**
                                                         **18-CV-1254-HKS**

**ANDREW SAUL, Acting**
**Commissioner of Social Security,**

                       **Defendant.**

## DECISION AND ORDER

Plaintiff, Ondrea Jefferson, brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of Acting Commissioner of Social Security (the "Commissioner"), which denied her application for supplemental security income ("SSI") under Title XVI of the Act.  Dkt. No. 1.  This Court has jurisdiction over this action under 42 U.S.C. § 405(g) and the parties have consented to the disposition of this case by the undersigned pursuant to 28 U.S.C. § 636(c).  Dkt. No. 21.

Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  Dkt. Nos. 14, 19.  For the reasons that follow, Plaintiff's motion (Dkt. No. 14) is GRANTED and the Defendant's motion (Dkt. No. 19) is DENIED.

**BACKGROUND**

On January 14, 2015, Plaintiff protectively filed an application for SSI with the Social Security Administration ("SSA") alleging disability since November 14, 2012, due to: right knee problems, a lazy eye, asthma, and difficulty breathing.  Tr.[1] 201-206, 220.  On June 9, 2015, Plaintiff's claim was denied by the SSA at the initial level and she requested review.  Tr. 123-127.  On October 16, 2017, Plaintiff appeared with her attorney and testified along with a vocational expert ("VE") before Administrative Law Judge, Brian Battles ("the ALJ").  Tr. 52-112.  On December 29, 2017, the ALJ issued a decision finding Plaintiff was not disabled within the meaning of the Act.  Tr. 12-31.  Plaintiff timely requested review of the ALJ's decision, which the Appeals Council denied on September 10, 2018. Tr. 1-6.  Thereafter, Plaintiff commenced this action seeking review of the Commissioner's final decision.  Dkt. No. 1.

**LEGAL STANDARD**

I.  **District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as

---

[1] References to "Tr." are to the administrative record in this matter.  Dkt. No. 8.

2

adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.     Disability Determination

An ALJ must follow a five-step process to determine whether an individual is disabled under the Act. *See Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  20 C.F.R. § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments.  *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work.  20 C.F.R. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to demonstrate that the claimant "retains a residual functional capacity to perform the alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience.  *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ's decision analyzed Plaintiff's claim for benefits under the process described above.  At step one, the ALJ found Plaintiff had not engaged in

substantial gainful activity since January 14, 2015, the application date.  Tr. 17.   At step two, the ALJ found Plaintiff has the following severe impairments:  osteoarthritis of the right knee; degenerative disc disease of the cervical and lumbar spine; obesity; chronic obstructive pulmonary disease (COPD); asthma; posttraumatic stress disorder (PTSD); and bipolar disorder.  *Id.*  Also, at step two, the ALJ found Plaintiff's history of alcohol and substance abuse disorder and lazy eye constitute non-severe impairments.  Tr. 18.  At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any listings impairment.  Tr. 18-20.

Next, the ALJ determined Plaintiff retained the RFC to perform a limited range of sedentary work.[2]   Tr. 20-26.  Specifically, the ALJ found Plaintiff can occasionally balance, stoop, kneel, crouch and crawl; and occasionally climb ramps or stairs.  Tr. 20.  The ALJ found Plaintiff can never climb ladders ropes, or scaffolds; never operate foot controls with the right lower extremity; never work in an area that has high concentrations of dust, fumes, gases and other pulmonary irritants; and never work in hazardous environments such as at unprotected heights or around dangerous machinery and open flames.  Tr. 21.  The ALJ also concluded that Plaintiff must use a cane to ambulate; can perform unskilled, simple, routine, repetitive tasks and can work in a low stress job, defined as having no fixed production quotas; can make only occasional decision making; can only tolerate occasional changes in the work setting;

---

[2] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  20 C.F.R. 416.967(a).

and have no more than occasional contact with supervisors, no more than occasional interaction with coworkers, and have no physical contact with the general public with respect to performing work related duties.  Tr. 22.

At step four, the ALJ found Plaintiff has no past relevant work.  Tr. 26.  At step five the ALJ concluded, based on the VE's testimony in consideration of Plaintiff's age, education, work experience, and RFC, that Plaintiff was capable of performing other work existing in significant numbers in the national economy.  Tr. 27.  Specifically, the ALJ found Plaintiff could perform the following jobs:  "Document Preparer," "Circuit Board Touchup," and "Inspector."  Tr. 27-28.  Accordingly, the ALJ found Plaintiff was not disabled under the Act from January 14, 2015, through December 29, 2017.  Tr. 28.

## II.     Analysis

Plaintiff argues that remand is warranted because the ALJ erred in evaluating the medical opinion evidence and relied on his own lay opinion in determining Plaintiff's physical and mental RFC.  Dkt. No. 14 at 2.  The Commissioner contends the ALJ's decision is supported by substantial evidence and should be affirmed.  Dkt. No. 19 at 3.  Having reviewed the record, this Court finds remand is required because the ALJ created a gap in the record that he was obligated to develop when he rejected the only medical opinion as to Plaintiff's physical functional capacity.  Because remand is warranted on this basis, this Court need not address Plaintiff's remaining arguments.

### (1) Physical RFC

RFC is defined as "what an individual can still do despite his or her limitations." *Melville v. Apfel*, 198 F.3d 45, 32 (2d Cir. 1999). An ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Id.* However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). "Where the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities," the general rule is that the Commissioner "may not make the connection himself." *Williams v. Berryhill,* 2017 WL 1370995, at *3 (W.D.N.Y. 2017) (quoting *Wilson v. Colvin*, 2015 WL 1003933, at *21 (W.D.N.Y. 2015)). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F.Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation omitted).

"[U]nder certain circumstances, particularly where the medical evidence shows relatively minor physical impairment, 'an ALJ permissibly can render a common-sense judgment about functional capacity even without a physician's assessment." *Wilson v. Colvin*, 2015 WL 1003933, at *21 (W.D.N.Y. 2015). Those circumstances are not present here, where Plaintiff suffered from multiple severe impairments which in

combination caused her serious limitations and persistent pain. *See Rohauer v. Comm'r of Soc. Sec.*, 2020 WL 1330700, at *5 (W.D.N.Y. 2020).

Here, the only medical opinion in the record regarding Plaintiff's physical functional capabilities was provided in 2015 by consultative examiner, Samuel Balderman, M.D. ("Dr. Balderman"), who examined Plaintiff in April of 2015. Tr. 291-296. Dr. Balderman diagnosed Plaintiff with obesity, asthma, poor vision in the right eye, and degenerative disease of the knees.[3] Tr. 294-295. He opined Plaintiff has difficulty with performing functions requiring excellent binocular vision and has "moderate to marked" limitations kneeling, climbing, carrying, and prolonged walking due to knee pain and deconditioning. Tr. 296.

The ALJ accorded the opinion "partial weight," explaining that although Plaintiff's limitations with kneeling, climbing, carrying and walking for prolonged periods due to her knee pain were supported by record evidence; the doctor's use of the words "moderate to marked" failed to sufficiently specify the time, length, weight, or duration of the physical functions Plaintiff is capable of performing. Tr. 25. The ALJ also explained he accorded "limited weight" to Dr. Balderman's opinion regarding Plaintiff's visual limitations, where he found it was inconsistent with Plaintiff's reported daily activities and treatment provider notes. Tr. 25. Here, the ALJ observed Plaintiff reported no difficulty with reading, shopping for items in the grocery store, or walking or moving

---

[3] The ALJ found Plaintiff suffered from the following severe impairments: osteoarthritis of the right knee; degenerative disc disease of the cervical and lumbar spine; obesity; chronic obstructive pulmonary disease (COPD); asthma; posttraumatic stress disorder (PTSD); and bipolar disorder. Tr. 17.

about due to visual limitations, indicating that she experiences no functional limitations as a result of decreased vision in her right eye.  Tr. 25 (citing Tr. 82-83).

After discounting Dr. Balderman's opinion, the ALJ determined Plaintiff retained the physical RFC to perform sedentary work with additional exertional, postural, and environmental limitations.  The ALJ primarily reached this conclusion through his own interpretation of various MRIs, X-Ray reports contained in the treatment records.  Although there are many treatment notes in the record, they generally contain bare medical findings and do not address or illuminate how Plaintiff's impairments affect her ability to perform work-related functions.  Under these circumstances, this Court finds the ALJ's physical RFC assessment is not supported by substantial evidence.  *See Wilson*, 2015 WL 1003933, at *21 (W.D.N.Y. 2015) ("[w]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific functional capabilities," the general rule is that the Commissioner "may not make the connection himself.").

Plaintiff argues that Dr. Balderman's opinion was also stale as the doctor did not consider Plaintiff's subsequent objective testing including ECG tests, MRI's and X-rays of Plaintiff's knee and spine (lumbar and cervical).  Dkt. No. 14 at 21-25.  Furthermore, the doctor did not consider Plaintiff's degenerative disc disease of the cervical and lumbar spine, COPD, and subsequent surgery on her right knee, performed in January of 2017.  *Id.*  Here Plaintiff contends the ALJ wrongfully relied on his own lay opinion in assessing this additional medical evidence without a medical opinion and that

9

the evidence relied upon demonstrates chronic, persistent, and degenerative conditions in conflict with the physical RFC finding. Dkt. No. 14 at 21-23. This Court agrees.

It is unclear to this Court how the ALJ, who is not a medical professional, was able to determine the time, length, weight, or duration that Plaintiff is capable of performing kneeling, climbing, carrying and walking for prolonged periods in consideration of her knee pain, degenerative disc disease of the cervical and lumbar spine, and COPD without a medical opinion. Especially where Plaintiff's right knee condition worsened following Dr. Balderman's examination in 2015, to the point where she underwent knee arthroscopy surgery in 2017. Yet the ALJ somehow concluded Plaintiff could perform sedentary work with additional specific limitations, including only occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps or stairs; and never climb ladders, ropes, scaffolds, or operate foot controls with the right lower extremity. Tr. 20-22.

The ALJ noted that Plaintiff had been diagnosed with and treated for knee, neck, and back impairments which have caused her pain and limited rage of motion, supporting that Plaintiff has exertional and postural limitations. Tr. 26 (citing Exhibits B2F; B3F; B6F; B8F). However, the ALJ concluded that Plaintiff's ability to climb on and off the examination table without assistance, rise from a chair without difficulty, and functional range of motion with her knee upon examination with Dr. Balderman in 2015; combined with her self-reported ability to complete self-care, shop for groceries

10

unassisted, and perform light cleaning and cooking, supported his RFC determination that she could perform a highly specific limited range of sedentary work.  Tr. 22.

The Commissioner relies on *Tankisi v. Comm'r of Soc. Sec.*, 521 Fed.App'x 29, 34 (2d Cir. 2013), in support of his contention that the ALJ was not required to seek another medical opinion, where "the record contains sufficient evidence from which an ALJ can assess [Plaintiff's] residual functional capacity.  Dkt. No. 19 at 7. The Commissioner's reliance is misplaced.  In *Tankisi*, the Second Circuit concluded that because the record was otherwise complete and included both an informal medical opinion from the claimant's treating physician in addition to a medical opinion from a consultative examiner, the ALJ did not err by failing to request a treating source opinion. However, unlike in *Tankisi* where there were two medical opinions in the record, here Dr. Balderman's consultative opinion was the *only* medical opinion of record and it was stale where it did not account for all of Plaintiff's impairments and subsequent deterioration of her right knee condition.  Furthermore, the ALJ discounted the opinion, creating a gap in the record, which he improperly filled by relying on his own lay opinion in determining Plaintiff's physical RFC.  Under these circumstances, it was necessary for the ALJ to rely upon a medical source's opinion in considering the limitations, if any, associated with Plaintiff's impairments.  *See Biro v. Comm'r of Soc. Sec.*, 335 F.Supp.3d 464, at 470-71 (W.D.N.Y. 2018) (holding independent medical examination relied upon by the ALJ  was stale where it was rendered nearly five years before the ALJ's decision and before the claimant's knee condition deteriorated because of a fall which led to two surgeries.).

Accordingly, this matter is remanded for further administrative proceedings, during which the record can be appropriately developed (including an updated function-by-function medical assessment of Plaintiff).  *See Rohauer*, 2020 WL 1330700, *5 (W.D.N.Y. 2020).

## CONCLUSION

For these reasons, Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 14) is GRANTED.  Defendant's Motion for Judgment on the Pleadings (Dkt. No. 19) is DENIED.  The Clerk of Court shall enter judgment and close this case.

**SO ORDERED.**

DATED:    Buffalo, New York
          May 5, 2020

*S/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**